**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA,**

                        **- against -**                                    **13-cr-413-2 (JGK)**

**YANI BENJAMIN ROSENTHAL HIDALGO**                        **OPINION AND ORDER**

                                **Defendant.**

**JOHN G. KOELTL, District Judge:**

On July 26, 2017, the defendant pleaded guilty to one count
of engaging and attempting to engage in monetary transactions in
property derived from specified unlawful activity, namely
narcotics trafficking, in violation of 18 U.S.C. § 1957. Dkt.
No. 222, at 30. In accordance with the defendant's plea
agreement and the Presentence Investigation Report, with which
the Court agreed, the defendant's Guidelines Sentencing Range
was 51 to 63 months. On December 15, 2017, the Court sentenced
the defendant principally to 36 months' imprisonment. The
defendant has been serving that sentence at Federal Correctional
Institution, Miami ("FCI-Miami") with a projected release date
of August 8, 2020. Dkt. No. 325-1. After his term of
imprisonment ends, the defendant will be removed from the United
States.

The defendant now moves pursuant to 18 U.S.C.
§ 3582(c)(1)(A)(i) for release from imprisonment on the grounds
that the combination of his age of 54 years, his medical

1

condition, and the COVID-19 epidemic warrant his immediate release from FCI-Miami. For the reasons explained below, the application is **denied**.

## I.

As amended by Section 603(b) of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), 18 U.S.C. § 3582(c) provides that:

> The court may not modify a term of imprisonment once it has been imposed except that
>
> (1) in any case –
>
>   (A) The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ["BOP"] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
>       (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
>   and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c).

When deciding a motion brought pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the threshold question is whether the

defendant has shown that "extraordinary and compelling reasons" exist to reduce the defendant's sentence. The relevant policy statement promulgated by the Sentencing Commission provides that a reduced sentence for "extraordinary and compelling reasons" may be based on the defendant's medical condition where the defendant is "suffering from a terminal illness" or where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A).

If "extraordinary and compelling reasons" exist, the court must then assure itself that a reduced sentence would be consistent with the factors set out in 18 U.S.C. § 3553(a). See United States v. Lisi, -- F. Supp. 3d --, 2020 WL 881994, at *5 (S.D.N.Y. Feb. 24, 2020). Finally, the policy statement requires the court to determine that the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" before the court may reduce the defendant's sentence. U.S.S.G. § 1B1.13(2).[1]

---

[1] A defendant must also comply with the procedural exhaustion requirement. There is no question in this case that the defendant has complied with the exhaustion requirement set out in 18 U.S.C. § 3582(c)(1)(A). On March 25, 2020, the defendant requested that the Warden of FCI-Miami move the Court for an order authorizing the defendant's early release and deportation to Honduras. Dkt. No. 325-2. On March 31, 2020, the defendant submitted a separate request that the Bureau of Prisons ("BOP") place the defendant in

Where, as in this case, the defendant argues that his
medical condition provides the basis for immediate release, the
existence of "extraordinary and compelling reasons" for
immediate release turns on the defendant's physical condition
and the degree to which that physical condition can be treated
within the context of a correctional facility, and does not in
the first instance turn on other factors, such as the length of
the remaining term of imprisonment, that are more appropriately
addressed when applying the 18 U.S.C. § 3553(a) factors.

## II.

### A.

In this case the defendant has failed to establish that
"extraordinary and compelling reasons" exist that warrant an
immediate termination of the defendant's term of imprisonment.[2]
The defendant's age of 54 is not, in and of itself, an
extraordinary and compelling reason because the defendant's age

---

home confinement for the remainder of the term of imprisonment. Dkt. No. 325-
3. The BOP never acted on the defendant's request for compassionate release,
but did deny his request for home confinement. Dkt. No. 325-7. On May 1,
2020, the defendant filed the present application with this Court. More than
30 days has elapsed between the requests the defendant made to the BOP and
the Warden of FCI-Miami, and therefore this application is properly before
the Court.

[2] In his submissions, the defendant appears only to seek an immediate release
under the First Step Act and does not appear to seek, in the alternative, an
order from this Court that the defendant be released to home confinement in
light of the COVID-19 outbreak. In any event, this Court does not have the
authority to issue such an order because the discretion to release a prisoner
to home confinement lies solely with the Attorney General and the CARES Act,
Pub. L. No. 116-136, 134 Stat. 281, 516 (Mar. 27, 2020), does not change that
authority. See United States v. Logan, No. 15-cr-27, 2020 WL 2559955, at *2
(W.D.N.C. May 20, 2020) (collecting cases).

does not place the defendant into a particularly vulnerable category for the COVID-19 virus. There is no presumption that anyone over 54 years of age should be released from prison in light of the COVID-19 virus. See United States v. Haney, -- F. Supp. 3d --, 2020 WL 1821988, at *5 (S.D.N.Y. Apr. 13, 2020) ("But if [the defendant's] age alone were a sufficient factor to grant compassionate release in these circumstances, it follows that every federal inmate in the country above the age of 60 should be forthwith released from detention, a result that does not remotely comply with the limited scope of compassionate release . . . .").

The defendant has not presented evidence of any physical conditions that make him particularly vulnerable to the COVID-19 virus and that are so severe as to warrant an immediate release from imprisonment because the defendant's ability to provide self-care within FCI-Miami is substantially diminished. In his initial motion, the defendant argued that he suffered from chronic sinusitis and atropic dermatitis (or eczema). However, the medical records from FCI-Miami submitted by the Government under seal do not show that the defendant had made any complaint about sinusitis to BOP medical staff, and the records reflected that the defendant was repeatedly provided with medical creams for his skin conditions. There is no evidence that either the defendant's eczema or his purported sinusitis is an "underlying

5

health condition that would heighten his chances of experiencing severe complications from COVID-19." United States v. Skelos, No. 15-cr-317, 2020 WL 2508739, at *2 (S.D.N.Y. May 15, 2020).

In response to the Government's submissions reflecting the defendant's BOP medical records, the defendant points to various medical conditions allegedly attested to in the medical records. Reply at 2. The defendant did not mention any of these conditions in his initial application and moreover the defendant does not explain how any of these conditions make the defendant particularly susceptible to contracting the COVID-19 virus or suffering from particularly severe symptoms. Rather, the defendant's submission simply states in conclusory fashion that these conditions, "which are symptomatic of serious immunological dysfunctions, render Mr. Rosenthal particularly susceptible to cont[r]acting the virus in his current prison environment." Reply at 2. The COVID-19 pandemic is serious, especially for individuals with underlying conditions that put them at heightened risk of developing severe illness as a result of COVID-19. But the defendant has not demonstrated  that the underlying conditions he points to in fact put the defendant at a heightened risk. See United States v. Garcia, No. 16-cr-719-2, 2020 WL 2539078, at *2 (S.D.N.Y. May 19, 2020). For example, the defendant does not point to any specific condition, beyond a general allegation that he is immunocompromised, that is a

condition identified by the Centers for Disease Control that would result in a heightened risk of developing severe illness as a result of COVID-19. See People Who are at Higher Risk for Severe Illness, Centers for Disease Control and Prevention (May 21, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

To the extent that the defendant relies on the declaration of his personal doctor, Dr. Lopez, to argue that immediate release is warranted, that reliance is misplaced because Dr. Lopez does not claim to have treated the defendant since his term of imprisonment began. The defendant points particularly to that part of Dr. Lopez's declaration in which he stated that "[p]ursuant to this medical condition and Mr. Rosenthal's age, if Mr. Rosenthal contracts COVID-19, his life is in jeopardy because his immune system is not in optimal conditions, and any COVID-19 related respiratory infection could destabilize the patient." Lopez Decl. ¶ 7. But there is no basis for these conclusions in the medical reports that reflect the defendant's much more recent examination by BOP medical staff that took place as recently as April 23, 2020 and at which time BOP medical staff also provided the defendant with cream for the chief ailment that the defendant complained about, namely his skin problems. Gov. Ex. A., at 1. Further, there are no non-conclusory allegations in the defendant's submissions that the

medical staff at the BOP, in general, or at FCI-Miami, in particular, have been incapable of treating the defendant's conditions while incarcerated or would be incapable of treating the defendant in the future were he to develop other conditions up to and including conditions related to COVID-19.

The defendant also argues that the existence of the COVID-19 pandemic and the difficulty of controlling the spread of the virus in the prison setting warrants the defendant's immediate release. The defendant points to the fact that corrections officers have contracted that disease at FCI-Miami. But there is no evidence that any inmate at FCI-Miami has contracted the disease, much less any evidence that the defendant has either contracted the disease or has exhibited any symptoms of the disease. The defendant's speculation about what could happen if inmates at FCI-Miami, in general, or the defendant, in particular, were to contract COVID-19 is not an extraordinary and compelling reason for release. See United States v. Lap Seng, No. 15-cr-706, 2020 WL 2301202, at *9 (S.D.N.Y. May 8, 2020) ("[T]he blanket claim that the structure of BOP institutions and BOP's programming are conducive to the spread of COVID-19 assumes that the spread of COVID-19 cannot be mitigated with the implementation of BOP's action plan. [The defendant] does not provide support for this assertion and it is at best speculation that borders on hyperbole.").

The defendant has therefore failed to demonstrate that there are "extraordinary and compelling reasons" that warrant a reduced sentence. On that basis alone the defendant's application is denied. See Skelos, 2020 WL 2508739, at *3 ("Because the Court finds there are no extraordinary and compelling reasons warranting compassionate release in this case, the Court need not consider the sentencing factors set forth in 18 U.S.C. § 3553(a), or Defendant's potential dangerousness.").

**B.**

In any event, application of the sentencing factors in 18 U.S.C. § 3553(a) to the facts of this case also weighs against immediate release.

The defendant argues that none of the goals of sentencing outlined in Section 3553(a) would be served by continuing the imprisonment of the defendant for the little additional time that the defendant has left to serve until August 8, 2020. The defendant also notes that he will be removed from the United States after he completes his sentence and thus the need for continued incarceration under the term of imprisonment imposed by this Court is further lessened.

The defendant's argument fails to account for all the reasons that the Court gave when imposing the sentence that the defendant is now serving. The defendant's offense conduct was

extremely serious, as the Court noted at sentencing. The
defendant participated in a money laundering operation for a
considerable period of time, from 2008 to 2013. Sent. Tr. at 39.
The defendant did business with narcotics traffickers,
purchasing over $6 million dollars of commodities from narcotics
traffickers with full knowledge that the commodities were the
fruits of narcotics trafficking activities, some of which
commodities were then shipped into the United States. Sent. Tr.
at 39-40. At sentencing, the Court found that the defendant's
activities were an important part of narcotics trafficking even
though the defendant did not directly traffic narcotics. Sent.
Tr. at 40.

At sentencing, the Court weighed the seriousness of the
offense against various mitigating factors including the
defendant's devotion to his family, his charitable works that
preceded any investigation by the Government, his acceptance of
responsibility, and the seizure of his substantial assets. Sent.
Tr. at 40-41. The Court arrived at a sentence principally of 36
months' imprisonment that represented a substantial downward
variance from the Guidelines Sentencing Range of 51 to 63
months' imprisonment, but the Court nevertheless determined that
the sentence was sufficient but no greater than necessary to
accomplish the relevant purposes of sentencing as required by
Section 3553(a)(1). Sent. Tr. at 41. In short, the Court

determined, as required by Section 3553(a), that the sentence imposed was the minimal sentence that would accomplish the relevant goals of sentencing, including reflecting the seriousness of the offense, affording adequate deterrence, and protecting the public.

Having made those determinations at the time of sentencing, there is nothing in the current application that causes the Court to reconsider the original sentence. The remainder of the term of imprisonment is simply the final portion of the sentence that the Court determined was the minimum sentence that was "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). That determination is as true today as it was when the Court originally imposed the sentence. See United States v. Martinez, No. 12-cr-862-10, 2020 WL 2079542, at *3 (S.D.N.Y. Apr. 30, 2020) (finding that where the defendant had originally been sentenced below the Guidelines Range for substantial criminal conduct, immediate release was not consistent with the goals of sentencing).

Finally, the defendant remains a risk to the community within the meaning of 18 U.S.C. § 3142(g) for substantially the same reasons that the sentencing factors in 18 U.S.C. § 3553(a) do not warrant immediate release. The defendant's serious offense conduct, which he conducted over a sustained period of

time, makes continued detention for the duration of the original term of imprisonment necessary to protect the community.

Thus, in addition to the defendant's failure to demonstrate "extraordinary and compelling reasons" warranting a reduced sentence, application of the factors set out in 18 U.S.C. § 3553(a) and the defendant's continued dangerousness as set out in 18 U.S.C. § 3142(g) also do not favor a reduced sentence.

CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed above, the arguments are either moot or without merit. The defendant's application for a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) is **denied.**

**SO ORDERED.**

**Dated:    New York, New York
        May 26, 2020               ___/s/ John G. Koeltl_____
                                        John G. Koeltl
                                United States District Judge**